al. Bruce Thomas, representing Cap Holdings. You may proceed. Thank you, Your Honor. May it please the Court, Bruce Thomas, on behalf of Cap Holdings, Inc., the appellant, plaintiff below, does business as Recovery Management International, probably we'll refer to it as CAP. We appreciate the opportunity to be here at Tulane today to participate. I think this case has some very interesting issues that show the mix of federal law and state law in their application. Federal law, in this case, voids a tax cell made in violation of FARAEA, specifically 12 U.S.C. § 1825b-2, while state law impacts the standing of the defendants to assert a statute of limitations defense. I think the first quite natural reaction to this case is, wait a minute, this tax cell you're complaining of occurred back in 1991. How can you be complaining about it 21 years later? Isn't there a statute of limitations issue? Surely there is. And there is. And it's addressed in First State Bank Keene. Texas law, and this isn't unique to Texas, this is most states, but Texas law provides that limitations is an affirmative defense personal to the debtor. And if the defendant is not in privity with that original debtor, then the defendant just simply doesn't have standing to raise limitations. Is that true of latches? I don't know if it's true of latches. Of course, it hasn't been raised. That has been in the back of my mind. I think we can demonstrate that our client took action reasonably, given the circumstances, once they came in possession of it. I hope you will. I think we can. I thought one of the parties raised the issue of latches. I'm sorry? I thought one of the parties pleaded latches. They may well have pleaded it, but it wasn't a basis presented. I think there's a whole litany of additional defenses that were presented in the pleadings that haven't been presented in motion. What about the fact that the RTA never mentioned that they didn't consent in 1991? What about the fact they participated in a tax suit and they didn't mention that they weren't consenting, that they weren't agreeing? Isn't that a bizarre situation? I don't think that makes any difference. I don't think the RTC, the FDIC under the statute has to affirmatively invoke it. I think that's the whole point of the statute, that folks have to come . . . You're saying they cannot waive it by their silence. They cannot waive it by their silence. They have a procedure that they published in the Federal Register. They said this is how you get our consent. If you don't do this, then you don't get our consent. In fact, in the Lee case, the first case that we talk about in the trilogy of cases here we're relying upon, the FDIC first said we don't have any interest. I mean, somebody said that on their behalf. But later, they changed their mind three years later and said we didn't consent. While we agree that the statute of limitations is six years, our position is the defendants just don't have standing to raise it. So, we've never contested the six-year limitation. First State Bank Keene, to quote it just briefly, it states at the beginning of the district court held that the appellants lacked standing to plead limitations. Then it goes on to say that is the central issue in the case. If we say rule in your favor to the extent that it is a general, that the principle that you assert is a general principle applicable to this situation, but there are other matters that may mitigate its force in this case that have not been decided earlier, do we have the authority under the facts of this case to remand for consideration of the other issues that might mitigate the force of that principle? Not only do you have that authority, we would welcome it. We don't want to be in a position of tilting at windmills here. We think we have a good position. We think we can get to conclusion on this and get the judgment, the same judgment in the district court rendered in First State Bank Keene. That's the judgment we think we're entitled to. But then again, we would welcome the court's guidance on some of these issues as we proceed forward below. We hope it's not a narrow opinion. If we rule in your favor and decide not to address any of the mitigating factors, is a remand necessary for you to proceed? I mean, what status does that put you in if we just rule outright in your favor? Well, I would welcome you to rule outright in our favor, but I think that would probably be error. I think we have to still prove up our chain of title below that they're contesting. We have to deal with their other defenses that they haven't presented. So I would love rendition if we could get it. We didn't ask for it because I don't think that would be proper. The central issue in this case is the same as it was in First State Bank Keene. And unfortunately, the district court just did not address it in any meaningful way. The district court labeled our argument a bootstrap apparently because the court considered it to be illegitimate because the standing issue was bound up in the merits of the case. But that just happens to be the facts of this case and what the law requires the court to consider. That was the issue in First State Bank Keene, and the court erred in failing to tackle the issue directly. Our position, I think, is well-grounded in this court's precedent. This circuit's decisions in Lee, Trembling Prairie, Matagorda County, Donna Independent School District, all say Section 825B2 represents the express will of Congress that the FDIC must consent to any deprivation of property initiated by a state. And then in Lee and Trembling Prairie, the court flatly states a tax sale violation of 1825B2 is null and void. Now, the defendants try to read those two cases to say something different, and they strain mightily to do so. But let me just quote briefly. Lee says, we hold that the tax sale at issue was conducted without the consent of the FDIC. Accordingly, the tax sale violated 12 U.S.C. 1852B2 and thus is null and void. Again, in Trembling Prairie, the tax sale violated 12 U.S.C. Section 1852B2 and thus is null and void. Tell us why you think this is, I mean, as a matter of rationale, why is this decision or conveyance null and void as opposed to vortical? First, because the principle of stare decisis, that's what this court has said. That violating 18 Section 25B2 renders the tax sale null and void. And I have to believe that we all know the difference between void as lawyers, and this court twice within the course of a year chose to use the term null and void rather than voidable. Now, the defendant certainly wants you to read it to say that was a mistake. We meant to say that it was voidable at the discretion of the FDIC, but that just isn't what the court has said. And presumably, the court believed that this is ultimately a supremacy clause issue, and when a state violates a federal statute, the action is null and void. Has the FDIC taken a position in this case now? Not formally in this case. Have they been – they certainly have not been made a party. No, they have not been made a party, and there's no basis, I don't think, to make them a party. We have sounded out the fact witnesses that were there at the time as to what they will testify to. There's only one tax sale. If the tax sale is null and void, it doesn't convey anything to anybody. If nothing is conveyed, then the defendants don't have – defendants are not in privity with the original debtor, and under Texas law, they don't have standing to raise defense of limitations. And that is precisely what the court – the district court ruled in First State Bank King. But, of course, it was reversed on appeal. So why do we take solace in First State Bank King?  It was reversed on a distinguishing fact that we don't have here. That's why we believe that the district court decision in First State Bank King is the one that we should get in this case. First State Bank King avoided the result in Lee and Trembling Prairie only because the FDIC was not joined in the action to foreclose the tax lien. Under Texas law, the failure to join a lien holder, and it wasn't unique that it was the FDIC, it would have been the same result for any lien holder. If you don't join that lien holder in a tax suit, then the judgment by operation of Texas law just doesn't affect them. Therefore, there was no reason, there was no occasion for 1825b-2 to come to the rescue in First State Bank King and void the tax sale because under Texas state law, it wouldn't have affected it anyway. So the import of the case and the way the district court decided, though, is important for our case because if the FDIC had been joined, then it would have been the opposite outcome if they had not consented to the tax foreclosure. Their interest would have been foreclosed out, and the judgment is very clear about that. It just takes a stick and pokes it in the eye of the RTC lien and says it's null and void and it's going to be wiped out. And that is the triggering event that impacts the application of 1825b-2 that renders that tax sale void. It was a lucky accident in First State Bank King that the plaintiffs had the tax authorities that sued the wrong bank. And because they had sued the wrong bank, they should have been suing the FDIC. Instead, they sued a successor bank that didn't take that asset, and that's why they were left out of the case. So they got a lucky break there, but that doesn't apply to our case. We have the same case Judge Buckmeyer thought he had, and in our case, the tax sale is void. What took 22 years to file this declaratory judgment? Well, of course, we didn't have it the entire time. We, your law firm, you mean? No, no. Well, that's true enough, too. We, my client, didn't have it the entire time. It went through several successive assignments, and there are thousands of assets that are being transferred at one time. It does take a lot of effort to go through all these assets, particularly when you get them en masse and review each one and find where the, frankly, find where the jewels are. So under your theory, because the party opposite are successors in interest, they don't have standing, but your client and successors in interest do. They're not successors in interest. That is the distinction. We are successors in interest to the FDIC. They are not successors in interest to the tax sale because the tax sale was void. That's the distinction. Yes, sir. Well, but again, you're saying they don't have standing because they weren't the original ones. Because they're not in privity with the original ones. Yeah, that's what I'm saying. Yes, yes, that's exactly what we're saying, and we're saying we do because we got – You have 22 years, but they don't have any. That's correct. In this instance, they don't have – they can't raise the statute of limitations defense, and that's the nature of not having standing to present a defense. We – you know, they had other ways to protect themselves, obviously. We wouldn't be standing here if the tax – if the title companies had done their job. I mean, that was the way to protect themselves. It was to follow what their circulars say, to follow what their bulletins say, and go out and research the tax – the title. And if they had an involuntary lien foreclosure, to see if the RTC or FDIC had an interest and to see if the record shows that they consented. If not, don't write the tax policy. Anybody sue the title companies? I think – I don't think there's been an occasion to sue them yet because they're standing behind and providing a defense. I mean, obviously, if we're successful, they've got a problem. How much is this all worth, all this property? There's no statute of limitations on the title company from 22 years? No. No, there isn't. As soon as the title issue comes up, they can make a claim. They should have done it right. To answer your question, we were just talking about that. It started off at $5.5 million. We believe it's something north of $30 million at this point in time. The defendants want to make an illogical leap from First State Banking. They want to say that if it's okay to proceed without joining the FDIC and First State Banking, then surely it must be okay if you join them and they don't complain about it. But it's quite the opposite. It's the joining of them that is the triggering event that triggers the application of federal law. When they don't consent and the tax foreclosure attempts to foreclose out their lien. In fact, their position below the Lorton defendants was that the lien was foreclosed out, that RTC lost its lien in the tax foreclosure. They've modified that position, and I appreciate that they're modifying their position, but I don't think they ought to be able to add new ones in its place. Are there any questions I can answer? Mr. Thomas, I think you have saved some time for rebuttal. I have. Thank you. Thank you. Mr. Oliver. Good morning, Your Honor. May it please the Court, Andrew Oliver for Appellee, Justin Pruitt. I will be addressing Cap Holdings' argument regarding Mr. Pruitt's standing to assert the affirmative defense of limitations. The other issues on appeal will be handled by Matthew Nowak. What do you say about the district court's just kind of blowing away the issue? The district court's opinion, I mean, it is what it is. I think at the end of the day . . . You're not defending that necessarily. The result, but not the . . . Correct. I defend the result. I would agree that it is relatively brief in reaching that result and did not discuss 1825b-2. I would like to start with taking a look at 1825b-2 because I think it's really important to look at the language of that statute. It's a very brief statute, and it says, No property of the corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the corporation. I think if it was the purpose of Congress to have such a far-reaching and impactful result as to prevent a taxing authority and void a taxing authority's action against a tax debtor and thus, as Cap Holdings asserts, void that judgment in its entirety, it would include language to that effect. Also, I think we need to look at what is being said here in the sense that the statute says, No property of the corporation shall be . . . Is that consent that is required waivable by the FDIC? Is it waivable? I think that to the extent the Federal Register waives it in certain situations, I think that . . . Let me add to that. If it's not waivable, can the consent be implied rather than expressed or explicit? Implied by participation in the lawsuit. I think that that is certainly a fact issue. As a matter of our summary judgment, we did assume for the sake of argument that there was no consent, and I think even if there was no consent as alleged by Cap Holdings, Mr. Pruitt still has standing to assert limitations because 1825b2 cannot void the judgment in its entirety because it's going to go beyond the scope of 1825b2 and not just apply it to the property of the corporation, which is liens and other interests that are acquired by the FDIC or the RTC when it takes over failed banks, but it would also require application of that statute to the fee simple title of the tax debtor who was being pursued for not paying the taxes. I think there is a jump that's being made by Cap Holdings that just isn't supported by the statute insofar as he is asking the court to say that it's void in its entirety. Right now, if we rule in favor of the plaintiffs in this case, in this declaratory judgment case, what is the result of that in terms of the overall impact on the case? If you grant and remand the case, Your Honor, there would have to be further determination whether or not the participation by the RTC in the underlying tax suit was a sufficient consent under 1825b2. So those issues would still be open even if we grant the declaratory leave requested. Yes, I believe they would. But again, I think that 1825b2 just simply says that it's just not going to be subject to a foreclosure action. And so, for example, if a foreclosure occurs, the only effect is if the FDIC's lien would survive the sale. Now, this trifecta of cases that... Well, that doesn't help a whole lot, does it? Say again? That doesn't help you a whole lot because, I mean, there's pretty stiff lien on that. Correct, but limitations would have run. The judgment would still be void. There still would be sufficient privity. It just would pass subject to the FDIC's lien, which is now time barred by limitations. Now, there's this trifecta of cases that Cap Holdings has relied on in support of its position and it points to the Lee case and Trembling case as authority that the tax sale should be rendered void. And, first of all, neither one of those cases answer the question of whether or not a purchaser who derives his or her title from the tax sale purchaser has standing to assert limitations. That question answers... Or, excuse me, those cases answer the question of whether or not a right of redemption under Louisiana law is given protection under 1825b2. The court does say yes, and I think that it's important to look at the right that was being claimed by the FDIC in those two cases. It's a right of redemption, which necessarily is going to require the tax sale in those cases to be set aside so that the FDIC can exercise that right. If you compare it against the First State Bank Keene case, that's a lien. And what Justice Garwood says in First State Bank Keene is that the FDIC cannot be deprived of rights that it never had. And as a lien holder, all it can do is require the sale of the property to be subject to its lien. That, I think, is very important because it goes to the impact of the scope of 1825, and Keene, fairly read, says that a purchaser whose title derives from a tax sale has standing to assert limitations. Now, this reasoning that Cap Holdings is relying on saying that 1825 doesn't apply in Keene because it was not a party to the tax suit, but in this case 1825 does apply and voids the judgment, I mean, even if it's correct insofar as it goes, it doesn't have any basis to make that extra leap. It's a circular argument. And it doesn't support voiding the judgment in its entirety. You know, again, the only thing that 1825... Well, what does it? If it's not in its entirety, what is it? Only as to the RTC. If you look at some of the... Well, then what, again, how much does that help you, though? It helps me in the sense that it gives my client the sufficient privity to go back and say, I do have a link. It's not void ad initio. It's just the tax sale is valid as to everybody else. It's just the purchaser took it... But they held the primary land on the properties, the deed of trust on the property, didn't they? I mean, I'm trying to get this in my mind, but it seems that if the FDIC can only assert its lien so you could not foreclose on its deed of trust, because it hadn't given its consent... That's correct. ...then that part of it would be void. Well, and basically the property... And that's the big part of it. And what basically the result would be is that the tax sale purchaser would take title to the property subject to the FDIC's lien. If you look at the Matagorda case, in the beginning, when it talks about the district court's opinion... No, go ahead. Finish your sentence. When it talks about the district court's opinion, it notes that the sale of the property would be subject to the FDIC's lien unless the FDIC consented to the subsequent foreclosure sale after the tax judgment was rendered. Okay, Mr. Sullivan. Thank you, sir. Mr. Nowak. May it please the court, on behalf of the other appellees, Lorden, Heisler, Mendoza, Rushing, and Stephan, we believe in this case that res judicata applies. We spent a lot of time in our brief arguing that fact. The appellant in this case has completely ignored that defense. Granted, we did not raise that defense in our 12B6 motion. The co-appellee, actually, Justin Pruitt, did, in fact, raise that defense. This court has held, however... Did he plead it as an affirmative defense? Yes, Your Honor, co-appellee Pruitt did plead it. We were just at the 12B6 motion to dismiss stage. This court, however, has held in Energy Development Court v. Martin a narrow line of cases that allows this court to look at res judicata for the first time on appeal if several things are met, which they are here. First, you affirm the trial court judgment, which we would be asking this court to do. Second, all the relevant facts are within the record. Here, it's very clear. Plaintiff has its First Amendment complaint and all its attached exhibits, including the judgment, Exhibit B, which is in the record at 548, including the assignments, which are from 621 to 642 in the record. The point being is all the relevant evidence is before this court to look at the defense of res judicata. If the court looks at the defense of res judicata, it does apply. All right, but where does that put you in the sense that you failed to plead it? I still think with res judicata being applied for the first time, we are allowed to have this court rule in our favor based off that fact, based off Energy Development Court. So you're not trying to dovetail on to the party who pleaded it? No, Your Honor. Based off that Energy Development Corporation v. Martin, this court can hear it for the first time on appeal and we do meet those pertinent exceptions to that rule. The question is not if the Williamson County Court had subject matter jurisdiction. It's did the appellant or its predecessor, the RTC, FDIC now, have an opportunity to raise subject matter jurisdiction. That answer to that question is unequivocally yes, they did. In this case, the RTC was a party to a lawsuit. They appeared with their counsel at trial. If I were deciding it, though, it would be much more prudent to remand the case for consideration of the res judicata defense, wouldn't it? No, Your Honor. I think this would be an exception under the Martin case in the sense that it's so clear. We don't have to follow it. The Martin case doesn't say that we have to follow that. No, Your Honor. You don't have to follow it, obviously. The point being is it's so clear, though, the defense of res judicata is met in this case. The U.S. Supreme Court in Traveler's Insurance v. Bailey stated that the key in that case involving bankrupt entities, Mansville, Johns Mansville, and the asbestos, the issue was Traveler's was involved in that case. There was an order issued by the bankruptcy court. Just like in this case, they go 20 years back. Later on, they say you can't do this. We're not held by that order. The court said so long as the respondents and those that are in privity with them were parties to the bankruptcy proceeding and were given a fair chance to challenge the bankruptcy court's subject matter jurisdiction, they cannot challenge it now. This court similarly has held in cases just like that in Royal Insurance Company v. Quinn. A case, Republic Supply Company v. Shope, this court held the same. Very similar case in the sense there you had a bankruptcy court where they made some rulings. All the parties were involved. There was a settlement. The settlement involved the releases of guarantors. The court said Section 524 may not allow that. Despite that point, the court came back and this court held regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, the bankruptcy court without objection and was accepted. Res judicata applied. Similarly, in this case, you have firea. They keep arguing there was no consent. Whether that is true or not, I think there is implied consent. Do we have an order? Let me interrupt you for a second. Your argument about res judicata and why it's available, does that apply equally to judicial estoppel and liches? I didn't find a case where waiver of judicial estoppel. I think the argument could be made. I don't have a case on point that allows for that, Your Honor. I don't think from my client's standpoint and my appellee's, we didn't even raise any affirmative offenses. We didn't file an answer. We did a 12B6 motion. I believe co-appellee did raise some of those defenses, however. The point being is res judicata does apply in this case. Firea, whether consent was given or not, it doesn't matter because just like in this case or the Republic Supply Company Shove case that this court held, the opportunity for that to be argued was at that time. The RTC was a party to the lawsuit. The court called the case to trial. In fact, the RTC was represented by counsel and signed off on the judgment. The time to argue subject matter jurisdiction was at that time, and they chose not to do it. They also had the option to file a motion for new trial. What do you have to say about the case that Mr. Thomas cited, I forgot which one it is, in which the FDIC changed its mind two or three years later? Well, all the cases amazingly cited by appellant are not on point. The only case that appellant cites where the RTC was a party to the lawsuit was Trembling Prairie. The distinction there is the FDIC in that case was part of the trial. Not like, I mean, it was part of the trial, and they said we don't give consent. In this case, the FDIC, or formerly known as the RTC, was a party to this lawsuit. They had the chance to raise that issue. Not this lawsuit. Not this lawsuit. The prior lawsuit, Williamson County in the 1991 judgment. More importantly, from a public policy standpoint, as Travelers cites, the U.S. Supreme Court says the time to prune these matters was then, not 20 years later. My clients have possession of this property through general warranty deeds that are before the court in the record, obtained it, paid money for their homes and ownership. In fact, I think there's 400 houses out there now in that community. The appellant wants to come back and say, King's Ed. Why don't we just, I mean, the prudent thing would be just to grant the declaration, the declaratory judgment to the point of reversing the district court's judgment because it failed to consider the implication of 1825 and the authorities that addressed that statute and just let it, just deny the, reverse the motion, reverse the denial of the motion dismissed and send it back. The problem with that, Your Honor, will be right back here before the court on the affirmative defense of res judicata because it applies. You'll be back anyway. But we can prune that tree now because they can't meet or make any argument that there's any case out there that's like this case where the FDIC was a party to the lawsuit and did not give their consent. Trembling Prairie, they didn't. But here they were. They signed off on the judgment. They could have raised that issue at the time. The Lee case, the King case cited by an appellant, are not on point because the FDIC was not a party to those. Of course, if they weren't given notice, of course that they didn't know what was going on. But in this case, it's easily distinguishable here, is the RTC or the FDIC did know what was going on. The time to raise that issue was then. They chose not to. Now the appellant says, well, we are in privity with them, which is one of the elements. We haven't even heard from the FDIC. I mean, wouldn't it be fair before we tag them with intent and failure to properly make the objection and so on to hear from them? It doesn't matter, Your Honor, because of this point. Consent does not matter because the subject matter jurisdiction issue should have been raised 20 years ago. Consent, not consent, that's not the issue. The issue is, did the appellant or its predecessor here, RTC, have the ability to make this argument that they're trying to make now? The answer is unequivocally yes. The FDIC, formerly known as the RTC, had that chance to make that argument and say, hey, we're not giving consent. We're not agreeing to this. It's like in all the other cases that appellant cites. And again, based off the public policy reasons. Mr. Court's not even considered them. They've not considered what you just said. The restitutacata defense? Well, not that so much, but, well, I mean, and the facts underlying the restitutacata defense. Well, the facts that were attached to the complaint, Your Honor, which are very – Exhibit B is a judgment which says the FDIC, the RTC, was a party. The language in the judgment itself even says the court says it has jurisdiction. And that's a pivotal point, too. We don't know what the FDIC records say, though, do we, about this? I mean, do we know that as well? No, Your Honor. There was not – this was at the 12B6 and MSJ stage. The FDIC wasn't even brought in as a party in this lawsuit. The point being, in this case also, the appellant doesn't address the issue. It's the judgment itself. It's presumed valid. It's presumed to have subject matter jurisdiction under the case law. There is no cases out there that appellant has provided that contradicts that point. As I just stated, the court said in its own order, we have jurisdiction. We are making this finding that these tax liens are taking priority over the RTC lien. Appellant also does not address the issue with regard to restitutacata, with regard to if the judgment was void versus voidable. We would assert that with regard to the judgment being void, there's four reasons or four elements where you can find a judgment to be void under state Texas law, which the appellant said in their brief was applicable, ganus versus ganus. You can find it void if there's no personal jurisdiction. Here there was personal jurisdiction. In fact, the record shows the RTC filed an answer at 878 in the record. Second, was there jurisdiction at the time to enter the judgment? There's been no argument that the court didn't have plenary power or anything like that. Third, the capacity to act as a court. Again, there's no reference that the court didn't have the power. In fact, the court did under the Government Code of 24.007 of the Texas Government Code and Article V of the Texas Constitution. So that leads us right back to the issue. Subject matter jurisdiction. But again, it's presumed within the face of the order, and the order itself says all the matters were considered by the district judge. Appellant also argues about the policy. I'd like to point this point out. Under 57 of the Federal Register 29491, that policy that's cited by the appellant in its brief is not retroactive. The policy was enacted in July of 92. The sale that took place here was in March of 1992, prior to that, and actually the sheriff's deed was corrected in May of 1992. The point being this register that the appellant continues to argue that's applicable in saying we didn't follow the proper process for consent is really not applicable. But if we're going to jump and say it is, I'd ask this court to look at Section 4A.3, which talks about the specifics of the corporation's interest. If it is not of record, then the consent is hereby granted. Lastly, for the public policy reasons, again, as I stated, I believe under res judicata that this court should affirm the trial court. Thank you. Thank you, Mr. Leroy. That concludes the case. Oh, I'm sorry. Yeah, I don't want to shortchange you. Perhaps I should know when to shut up and sit down. But I do want to just clarify a couple of things. There isn't any authority in the case law for the concept of implied consent of the FDIC. It's certainly their position that they don't imply legal consent, that you have to go through their procedure. Their final procedure was in 1992, but they had interim procedures before that. And furthermore, the case law is very clear that it doesn't matter when the lien arose, whether it was before or after the FDIC took their position. Once they got involved, you have to get their consent or your tax foreclosure is going to be void. Matagorda County doesn't say what counsel said. My recollection is it said that if you say if you're going to conduct a tax sale that's going to be valid, then you must make it subject to the FDIC's lien. May I inquire, did the court receive my supplemental brief on res judicata? I'm sure it did. And I'm sure it will be read. Wait a minute. A brief or a 28-J letter? I was instructed to file up to a five-page letter brief on res judicata. We'll get it. Yes. And so I don't want to belabor what I've said there. But just briefly, the res judicata is all I read here. The law is quite clear. This is another interaction of federal law and state law, that you look to state law to determine the preclusive effect of a state judgment. And this was a Texas judgment. And Texas doesn't accord any preclusive effect to a void judgment, whether it's void for any reason. And one of the reasons a judgment can be void is the court doesn't have any power to enter that type of judgment. And Lee and Trembling Prairie specifically say that a state court doesn't have power to enter a tax judgment that violates Section 1825b-2. So unless the court has additional questions, I will close. Okay, thank you, Mr. Thomas. That does conclude.